# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JESSICA LYNN WHITE,

       Plaintiff,

      vs.                                     Civ. No. 18-1166 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

       Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17) filed February 25, 2019, in support of Plaintiff Jessica Lynn White's Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On April 29, 2019, Plaintiff filed her Motion to Reverse and Remand for a Rehearing With Supporting Memorandum ("Motion"). Doc. 19. The Commissioner filed a Response on July 9, 2019 (Doc. 22), and Plaintiff filed a Reply on July 22, 2019 (Doc. 23). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 11, 17.

## Background and Procedural Record

Claimant Jessica Lynn White suffers from the following severe impairments: post-traumatic stress disorder; bipolar disorder; major depressive disorder; and anxiety. Administrative Record ("AR") at 512. Plaintiff graduated from high school. AR 263. She attended vocational college and obtained certifications in: automotive fundamentals (tune-ups, oil changes, brake changes); office management (clerical work), which she obtained online; and, as reported to a psychologist, phlebotomy. AR 263, 576, 588, 806. She has past relevant work as an office manager. AR 602.

On June 18, 2012, Ms. White filed concurrent claims of disability under Title II and Title XVI of the Social Security Act, alleging disability beginning May 25, 2008. AR 72, 84. Her applications were initially denied on December 3, 2012 (AR 96-97), and upon reconsideration on July 10 & 12, 2013 (AR 124-25). Ms. White requested a hearing on September 6, 2013. AR 155-58. Administrative Law Judge ("ALJ") John W. Rolph conducted a hearing on October 3, 2014. AR 36-70. Ms. White appeared in person at the hearing with attorney representative Michael Armstrong. AR 36. The ALJ took testimony from Ms. White and Vocational Expert ("VE") Nicole King. AR 36.

On January 21, 2015, ALJ Rolph issued an unfavorable decision. AR 18-30. On February 6, 2015, the Appeals Council denied Ms. White's request for review. AR 1-4. Ms. White filed a timely appeal with this Court on June 14, 2016. AR 566-67. On May 24, 2017, Magistrate Judge Carmen E. Garza reversed and remanded for a rehearing. 545-63. Judge Garza found that ALJ Rolph's discussion of the medical opinions was confusing and left the Court unable to perform a meaningful review.  AR 555-62. "On remand," she concluded, "the ALJ should properly weigh all medical opinions in the record." AR 562.

The Appeals Council then issued an order remanding the case to an ALJ to offer Ms. White the opportunity for a hearing, to complete the administrative record, and to issue a new decision consistent with the order of the court. AR 537. On September 7, 2018, Ms. White appeared for a second hearing, this time before ALJ Stephen Gontis with attorney representative Laura Johnson. AR 570. ALJ Gontis also heard from VE Kristi Wilson. AR 571.

ALJ Gontis issued an unfavorable decision on September 21, 2018. AR 508-26. In that decision, ALJ Gontis recognized that Ms. White amended her alleged onset date to June 18, 2011 and again to May 15, 2012. AR 511. But Ms. White's date last insured was June 20, 2010. *Id.* Therefore, ALJ Gontis found that Ms. White waived her Title II claim. *Id.* He also noted that Ms. White "requested a closed period as she returned to work on April 29, 2017." *Id.* Therefore, the remainder of his decision addressed the timeframe of May 15, 2012 to April 29, 2017 for the purpose of Title XVI benefits. *Id.* Ms. White does not appeal this holding, as the Commissioner notes. Doc 22 at 2 n.2.

ALJ Gontis' decision is the final decision of the Commissioner. 20 C.F.R. §§ 404.984, 416.1484. On December 11, 2018, Ms. White timely filed a Complaint seeking judicial review. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

**Applicable Law**

A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382a(a)(3)(A) (pertaining to supplemental security income disability

3

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity" ("SGA").[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## Analysis

In support of her Motion to Remand, Ms. White argues that ALJ Gontis failed to comply with the remand instructions of this Court as set forth in Judge Garza's 2017 memorandum opinion. Specifically, Ms. White argues that ALJ Gontis failed to follow Judge Garza's instructions when he evaluated the opinions of consultative examiner Dr. John Owen and treating counselor LPCC[4] Lisa Harvey. In addition, Ms. White argues that substantial evidence does not support ALJ Gontis' evaluation of the opinion of consultative examiner Steven K. Baum, PhD. The Court does not find these arguments compelling and affirms the ALJ's decision.

---

[4] "LPCC" in New Mexico refers to a licensed professional clinical counselor.

## I.     ALJ Gontis Did Not Violate the Mandate Rule.

Ms. White's main argument for remand concerns the "mandate rule." Doc. 19 at 14. "Although primarily applicable between courts of different levels, the [law of the case] doctrine and the mandate rule apply to judicial review of administrative decisions, and require the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (internal quotation marks and alterations omitted). "Obviously, the court which drafted the mandate is normally in the best position to determine whether the [agency]'s subsequent order is consistent with the mandate . . . ." *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 379 (1965); *see also Patterson v. Apfel*, 198 F.3d 258, 1999 WL 1032973, at *4 (10th Cir. 1999) (unpublished table decision) ("the court issuing a mandate governing further proceedings is in the best position to interpret the scope of that mandate"). The Court finds that ALJ Gontis did not violate the mandate rule with respect to the opinions of Dr. Owen and LPCC Harvey.

### A.     Dr. Owen's Opinion

In November 2012, consulting psychologist John P. Owen, Ph.D. performed an evaluation of Ms. White. AR 465-67. Dr. Owen found Ms. White cooperative and that she "understood simple questions and instructions." AR 466. He estimated that she functions in at least the average range of mental ability. *Id.* Dr. Owen discussed at length Ms. Smith's history of trauma and found that "[s]he certainly has characteristics and symptoms consistent with the diagnosis of PTSD." AR 465, 467. He stated that her "Obsessive Compulsive Disorder diagnosis seems to be accurate"; that she "is in therapy and takes medication for her conditions"; and that "Bipolar Disorder could not be formally diagnosed, but it should be considered." AR 467. He then provided the following opinion on her limitations:

1. Understand and Remember
   A. Detailed or complex instructions:          moderate difficulty
   B. Very short and simple instructions:         mild difficulty

2. Sustained Concentration and Task Persistence
   A. Ability to carry out instructions:          mild difficulty
   B. Ability to attend and concentrate:          moderate difficulty
   C. Ability to persist at tasks:                mild difficulty
   D. Ability to work without supervision:        mild difficulty

3. Social Interactions
   A. Ability to interact with the public:        marked difficulty
   B. Ability to interact with co-workers:        moderate to marked difficulty
   C. Ability to interact with supervisors:       moderate to marked difficulty

4. Adaptation
   A. Ability to adapt to changes in the workplace:  moderate difficulty
   B. Ability to use public transportation:       moderate difficulty

AR 467.

In the first ALJ opinion issued in this case, ALJ Rolph summarized Dr. Owen's opinion and stated that "Dr. Owen reported claimant's impairments were generally between slight in moderate levels of severity." AR 25. ALJ Rolph gave "Dr. Owen's opinions in this regard significant weight." AR 25. ALJ Rolph also recognized that "[t]he only two categories where Dr. Owen noted claimant had marked difficulty is in concentration and in ability to interact with the public." AR 25. ALJ Rolph gave "only some weight to Dr. Owen on this particular assessment." AR 25. "His suggestion that the claimant has 'marked' limitations in concentration and in interacting with the public appears excessive in light of her ability to attend college classes without significant distress." AR 25-26.

On appeal to this Court, Judge Garza found that ALJ Rolph mischaracterized Dr. Owen's opinion: "These findings by the ALJ are confusing because Dr. Owen did not find that Ms. White has *marked* limitations in her ability to concentrate; instead, he found that Ms. White has

*moderate* limitations in her ability to concentrate." AR 556. "Therefore, it is not clear to the Court whether the ALJ gave this finding significant weight or only some weight." *Id.* If he gave it significant weight because it is only a moderate limitation, then he erred by failing to account for it in the RFC. *Id.* On the other hand, if he gave it only some weight, he failed to clearly explain why he did so. *Id.* "Moreover, the ALJ's purported reason for discounting this opinion— that Ms. White was able to attend college classes without significant distress—is contradicted by Ms. White's testimony at the hearing that she stopped attending college after three semesters because she could not handle the stress." AR 557. "In addition, the ALJ failed to note that Dr. Owen's opinion regarding Ms. White's ability to concentrate is consistent with other similar findings in the record," including the opinions of the state agency consultants as well as Ms. Harvey. *Id.*

On remand, ALJ Gontis held another hearing and found Ms. White not disabled. AR 508-26. He gave a thorough description of Dr. Owen's report and accurately summarized the doctor's opinion that "the claimant had marked difficulties in ability to interact with the public, moderate to marked difficulties in ability to interact with coworkers and supervisors and moderate difficulties in ability to understand and remember detailed or complex instructions, to attend and concentrate, to adapt to changes in the workplace and to use public transportation." AR 517. ALJ Gontis assigned Dr. Owen's opinion "[m]oderate weight" because "he is an acceptable medical source under the regulations whose opinion is generally consistent with his examination of the claimant." *Id.* "More weight is not given to his opinion as his conclusion that the claimant had marked limitations in ability to interact with the public is not entirely consistent with the evidence, including the claimant's ability to perform ADLs that required some contact with others." AR 517-18. "The limitations he opined she had in ability to understand and remember

instructions and to attend and concentrate is inconsistent with the claimant's subsequent reports that she obtained certificates in several areas of study, finished college level classes, homeschooled her children and that she has been able to maintain employment at the SGA level since April 2017." AR 518.

Ms. White argues that ALJ Gontis repeated the same errors as ALJ Rolph because ALJ Gontis relied on Ms. White's ability to attend college classes without acknowledging her testimony that, even though she completed three semesters of schooling, she stopped because it became stressful. Doc. 19 at 16 (quoting AR 59). Ms. White also argues that, because she testified that she took online-only classes which let her work at her own pace, her college attendance is not probative evidence of whether she can concentrate at a full-time job with normal breaks. *Id.* at 16-17. Ms. White appears to raise two separate claims with respect to the treatment of Dr. Owen's opinion: first, it violates the mandate rule; and second, independent of Judge Garza's opinion, substantial evidence does not support ALJ Gontis' analysis. The Court rejects both parts of her argument.

First, ALJ Gontis' decision does not violate Judge Garza's mandate. He did not repeat the same mistake Judge Garza found in ALJ Rolph's opinion: indicating that Dr. Owen set a marked limitation in Ms. White's ability to concentrate, when Dr. Owen in fact said the limitation was moderate. AR 556. In contrast, ALJ Gontis accurately described Dr. Owen's opinion. AR 517. And Judge Garza concluded that ALJ Rolph failed to give sufficiently specific reasons to enable meaningful judicial review. AR 557-58. But ALJ Gontis gave four very specific reasons as to why he was giving little weight to Dr. Owen's opinion on Ms. White's limitations in concentration: the limitation is inconsistent with evidence that Ms. White (1) obtained certificates in several areas of study; (2) finished college level classes; (3) homeschooled her

children; and (4) has been able to maintain employment at the SGA level since April 2017. AR 518. He therefore complied with Judge Garza's mandate.

True, Judge Garza was critical of ALJ Rolph's decision to discount Dr. Owen's opinion based on Ms. White's alleged "ability to attend college classes without significant distress," and ALJ Gontis cited Ms. White's ability to finish college-level classes as one reason to discount Dr. Owen's opinion. AR 26. ALJ Gontis' discounting does not suffer from the same concerns Judge Garza raised about ALJ Rolph's discounting, however. ALJ Rolph discounted Dr. Owen's opinion for no reason other than the fact that Ms. Rolph attended college courses. Judge Garza expressed concern with this because Ms. White testified she had to stop attending college classes due to the stress such attendance caused. AR 557; *see* AR 59 (hearing transcript). But ALJ Gontis did not repeat this error. He found that Ms. White's ability to *obtain certificates* and *finish* college-level classes, *despite* whatever distress they caused her, demonstrated that she could attend and contrate. AR 518. As described above, he also gave three other reasons for discounting Dr. Owen's limitation, reasons which ALJ Rolph did not give and thus Judge Garza did not review.

Second, to the extent Ms. White argues that ALJ Gontis' findings are unsupported by substantial evidence, apart from the mandate rule, the Court disagrees. Record evidence supports his findings concerning her college class attendance. Ms. White's Appeals Disability Report, filled out in February 2013 by her attorney, indicates that she is "trying to keep herself occupied by going to school" and "taking one class at a time." AR 308; *see* AR 515 ("However, the claimant also reported that she cared for her three children, prepared complete meals, cared for pets, did laundry, washed dishes and went to school."). ALJ Gontis also noted that Ms. White reported "to a State agency consultative examiner that she attended a community college." AR

516. He cited Dr. Owen's report, which is dated November 2012 and states that Ms. White attends Central New Mexico Community College for three days a week. On those days, she gets up at 5 am and is at school from 7:30 am to 5:30 pm. AR 465-66. ALJ Gontis noted that Ms. White "reported to a psychologist in August 2018 that she had obtained certificates in 'phlebotomy, office management and automotive.'" AR 516 (citing AR 806). The psychologist's report does not indicate when those certificates were obtained. AR 806. "[S]he reported in May 2011 . . . that she had completed her final examinations and that she was going to take eight classes during the summer semester." AR 517. ALJ Gontis also cited a therapist's progress note from Sage Neuroscience Center. AR 410. He noted that the next month's progress note confirmed that she was "[s]urviving her 8 classes." AR 517, 409. In February 2013, Ms. White reported that "school was going well." AR 518 (citing AR 481). In light of all of this record evidence, contrary to Ms. White's argument, ALJ Gontis was not required to credit Ms. White's hearing testimony that she did not in fact attend classes but was "doing it all from home online." AR 588. An ALJ's assessments of such matters "warrant[s] particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

Ms. White also argues that ALJ Gontis impermissibly discounted Dr. Owen's opinion that she is markedly limited in her ability to interact with the public. Doc. 19 at 17. At the hearing before ALJ Gontis, Ms. White testified that she only went shopping "in the middle of the night when there's nobody there." AR 599. Thus, Ms. White argues that ALJ Gontis should not have relied on her activities of daily living in order to conclude that she can interact with the public appropriately. Doc. 19 at 17. As the Commissioner points out, the problem with Ms. White's reasoning is that ALJ Gontis did not find that she can interact with the public. Doc. 22 at 13. Instead, the RFC specifies that Ms. White can "have only infrequent, superficial interaction

with the general public." AR 515. In addition, the ALJ limited her to "simple, routine tasks" and identified jobs she can perform that are unskilled, with an SVP of 2. AR 515, 525. Unskilled work does not typically require the ability to interact with the public. *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016). Neither Ms. White's motion nor her reply explains why ALJ Gontis' RFC is not restrictive enough, and the Court finds her briefing on this point insufficient to preserve the issue.

Ms. White further argues that substantial evidence does not support the ALJ's conclusion that Ms. White's activities included homeschooling her children. Doc. 19 at 17-18. Ms. White acknowledges, as she must, that a treatment note by Marie Mugavin, PhD on September 2, 2015 contains the indication that Ms. White's employment consists of "home schooling and raising children." AR 927. Ms. White argues that the ALJ was not entitled to rely on this treatment note because Dr. Mugavin's subsequent report, dated December 1, 2015, fails to mention "homeschooling" but states that Ms. White's "future orientation [was] to see daughter's music performance/boys taking archery." Doc. 19 at 18 (quoting AR 932). Ms. White also points to her hearing testimony that, at some point between 2011 and 2017, she drove her kids to and from school, and that her fiancé reported helping her with taking the kids to school. AR 19 at 18.

None of this cited evidence contradicts Dr. Mugavin's note that Ms. White was homeschooling her kids in September 2015. That is perfectly consistent with having a daughter perform music and sons take archery classes. Dr. Mugavin's internal notes are not inconsistent because the December 2015 note does not include a dedicated space to note Ms. White's employment; the note about music and archery is included in Dr. Mugavin's evaluation of whether Ms. White is at risk of suicide. AR 932. In addition, Ms. White's testimony that she drove the kids to school at some point in a six-year period does not indicate that she never

homeschooled during that period. It is certainly possible that her children attended school for part of this period and were homeschooled during a separate part. The ALJ did not err in accepting Dr. Mugavin's September 2015 note that Ms. White was homeschooling her kids.

Finally, Ms. White criticizes the ALJ for failing to "cite to a specific source in the record where he obtained information regarding Ms. White homeschooling her children." Doc. 19 at 19 n.17. This is not a fair criticism. The ALJ stated:

> The claimant sought care from Sage Provider Marie Mugavin, PhD, in September 2015, who noted that the claimant reported being "very active," using cannabis and supplements to manage her bipolar disorder and that she was "well managed over all on her medications" (Ex. 19F/42-46). Dr. Mugavin also noted that the claimant reported that her employment was "home schooling and raising children."

AR 519. Exhibit 19F at page 45 is AR 927, *i.e.*, Dr. Mugavin's September 2015 note that Ms. White was homeschooling her kids. If Ms. White means that the ALJ had to cite Exhibit 19F at page 45 every time he mentioned the word "homeschooling," that is wrong. *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) ("While Mr. Webb takes issue with the ALJ's general reference to medical records 'all discussed above,' in this case it is not difficult to determine what inconsistencies the ALJ relied upon." (citation omitted)); *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

The Court concludes that ALJ Gontis' evaluation of Dr. Owen's opinion is supported by substantial evidence.

B.    Ms. Harvey's Opinion

On September 11, 2014, Lisa Harvey, LPCC, of Sage Neuroscience Center completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). AR 499-500. The form

instructed Ms. Harvey to give "an assessment of how the patient's mental/emotional capabilities are affected by the impairment(s)." AR 499. The form is broken down into the familiar nonexertional categories (understanding and memory; sustained concentration and persistence; social interaction; and adaptation). AR 499-500. Ms. Harvey assessed "marked" limitations on Ms. White's ability to maintain concentration for two-hour segments and travel in unfamiliar places or use public transportation. AR 499-500. She assessed "moderate" limitations on Ms. White's ability to understand and remember detailed instructions; carry out detailed instructions; work in proximity other others without being distracted by them; complete a normal workday without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers without distracting them or exhibiting behavioral extremes. AR 499-500. Additionally, on September 27, 2014, Ms. Harvey signed a letter opining that Ms. White "has been disabled since before June 30, 2010." AR 504.

In his opinion, ALJ Rolph noted that Ms. Harvey is not an "acceptable medical source"[5] and gave the following reasons for assigning her opinion "little weight": (1) the record does not contain any treatment notes from Ms. Harvey to support her findings; (2) Ms. White's records

---

[5] For claims filed before March 27, 2017, as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

show that she has good focus and concentration on her medications; (3) Ms. White scored a 29 out of 30 on the Mini Mental Status Exam; (4) Ms. White regularly attends college classes and actively applies for jobs; and (5) the decision of whether a person is "disabled" is reserved to the Commissioner. AR 26.

On appeal, Judge Garza found that, "[g]iven the length and frequency of the treatment provided by Ms. Harvey, her opinions as to Ms. White's mental limitations should have been properly weighed against other medical opinions in the record." AR 561. She criticized ALJ Rolph for "g[iving] Ms. Harvey's opinions only little weight, without specifying which of her opinions he assigned this weight." AR 561. She concluded that his decision was "not sufficiently specific" and "the Court is unable to meaningfully review the ALJ's findings." *Id.* She also indicated that ALJ Rolph should have considered whether the treatment records of other providers in Sage Neuroscience supported Ms. Harvey's findings. AR 562. She concluded that ALJ Rolph did not discuss whether Ms. Harvey's opinions regarding Ms. White's limitations are consistent with the opinions from the state agency consultants, from Dr. Owen, and from Mr. Krumm. AR 562. "The ALJ's failure to account for how he resolved these inconsistencies constitutes legal error." *Id.*

On remand, ALJ Gontis described Ms. Harvey's opinions accurately and at length. AR 518-19. He stated that "[l]imited weight is given" to her opinion that Ms. White has:

> marked limitations in ability to maintain attention and concentration for extended periods of time and in ability to travel to unfamiliar places or use public transportation, while she had moderate limitations in ability to understand, remember and carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal work and workweek with interruptions from psychologically based symptoms and to perform at a "consistent pact" without unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes and respond appropriately to changes in the workplace.

AR 518. He then gave the following reasons for discounting her opinion: (1) despite the claimant's reports that she attended therapy nearly weekly with Ms. Harvey, the evidence of record lacks treatment records from her; and (2) Ms. Harvey's statements regarding Ms. White's marked limitations are unsupported by Sage treatment records, which indicate that Ms. White reported repeatedly that her symptoms were managed, despite moving away from taking medications. AR 518-19.

ALJ Gontis' opinion complies with Judge Garza's instructions. First, he clearly explained which of Ms. Harvey's opinions he was rejecting, and gave specific reasons why he did so. AR 518-19. Second, he examined, at great length, whether the records from other treatment providers at Sage Neuroscience support Ms. Harvey's opinion, and explained why they do not. AR 517-21. Finally, he specifically described and evaluated the opinions of the state agency consultants, AR 521-22; Dr. Owen's opinion, AR 517-18; and Mr. Krumm's opinion, AR 520. In doing so, he complied with Judge Garza's instructions to consider all the medical opinion evidence.

Before this Court, Ms. White argues that ALJ Gontis impermissibly relied on the lack of treatment records from Ms. Harvey, given the evidence that Ms. Harvey treated her approximately every 2 weeks since 2010 or 2011. Doc. 19 at 20 (citing AR 583-84). In addition, Ms. White reminds the Court that Ms. Harvey had access to all of Ms. White's treatment records at Sage Neuroscience Center as part of Ms. White's treatment team at that facility. Doc. 19 at 20-21. This argument would have more force if the Sage treatment records supported Ms. Harvey's opinion. Judge Garza instructed ALJ Gontis to evaluate the Sage treatment records in considering whether Ms. Harvey's opinion was consistent with the medical evidence. He did so, at length. AR 517-21. As he explained, the Sage records show that Ms. White repeatedly

reported that her symptoms were managed and that Ms. White continued to engage in substantial daily activities of living. AR 518-19. Thus, the existence of the Sage "treatment team" records only supports the ALJ's analysis of Ms. Harvey's opinion. Ms. White does not specifically challenge the ALJ's findings regarding the entire body of Sage records, and she therefore waives any such challenge.

Finally, ALJ Gontis separately evaluated Ms. Havey's statement that Ms. White "has been disabled since before June 30, 2010," assigning it "[l]imited weight." AR 519. He explained that Ms. Harvey does not state why she believes that the claimant is disabled, while the evidence of record indicates that the claimant worked at the SGA level until May 2012 and then returned to work at the SGA level in 2017; that her conclusion that Ms. White is "disabled' is a finding reserved to the Commissioner; and that the record indicates Ms. White's conditions were well-managed with cannabis and Ms. White retained significant function in her daily activities. *Id.* The level of specificity in this discussion complies with Judge Garza's mandate to issue a decision sufficiently specific to enable this Court to meaningfully review the Commissioner's findings.

Ms. White further argues that ALJ Gontis was required to accept Ms. Harvey's opinions because Judge Garza mandated that the ALJ consider that her opinions are consistent with other opinion evidence in the record (the state agency consultant opinions, Dr. Owen's opinion, and Mr. Brian Kumm's opinion). Doc. 19 at 21 (citing AR 80, 107, 467 & 501). But Judge Garza did not instruct the ALJ to accept Ms. Harvey's opinion in full; she required the ALJ to "properly weigh all medical opinions in the record." AR 562. As the Commissioner argues, ALJ Gontis could not have simply accepted both Ms. Harvey's opinion and Dr. Owen's opinion, as they conflict with each other in certain areas. Doc. 22 at 7-8. For instance, Ms. Harvey said Ms. White

has a marked limitation in attending and concentrating, AR 499, while Dr. Owen said that limitation is only moderate, AR 467; and Ms. Harvey opined that Ms. White would have a slight limitation in interacting with the general public, AR 500, while Dr. Owen opined that this limitation is marked, AR 467. As a matter of common sense, ALJ Gontis was required to at least partially reject one or both of these opinions even after Judge Garza rejected ALJ Rolph's treatment of them. The Court does not read Judge Garza's opinion as mandating that the ALJ accept as consistent opinions which the record clearly demonstrates are inconsistent. Instead, Judge Garza's instructed, "[o]n remand, the ALJ should properly weigh all medical opinions in the record." AR 562. The Court finds that ALJ Gontis complied with this mandate.

Finally, to the extent Ms. White argues that ALJ Gontis' opinion is not supported by substantial evidence, the Court disagrees. Ms. White argues that Ms. Harvey's opinion should not have been rejected because it is consistent with the state agency consultants' opinions. Doc. 19 at 21 (citing AR 80, 107). Ms. White cites to the checkbox-style limitations in the agency consultants' opinions, rather than their narrative conclusions on AR 81 and 108. The Court finds that ALJ Gontis properly relied on the agency consultants' narrative opinions, rather than the checkbox-style limitations. *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016); *see Rush v. Saul*, 389 F. Supp. 3d 957, 964-69 (D.N.M. July 11, 2019). The agency consultants' ultimate opinion, as expressed in their narrative sections, is that Ms. White is not disabled. AR 81 ("Although the claimant has moderate limitations, she can perform simple, routine tasks, and would be suitable in an environment with limited contact with others."); AR 108 ("Review of evidence pertaining to mental impairment, including evidence received at Recon, does not support further functional limitations to the mental assessment at Initial. Prior assessment is affirmed as written."). ALJ Gontis gave "[s]ignificant weight" to these opinions because they are

"are consistent with the evidence of record as a whole, which indicates that the claimant was able to attend college classes, earn certificates in several areas of study, care for her children and was deemed repeatedly by providers to have managed mental health conditions." AR 522. This is substantial evidence supporting his rejection of Ms. Harvey's more extreme limitations.

Finally, Ms. White fails to specifically challenge ALJ Gontis' treatment of the opinion of Mr. Brian Krumm appearing at AR 501, other than to argue that ALJ Gontis should have taken it into account when analyzing Ms. Harvey's opinion. Doc. 19 at 11 n.9 & 21. The Court finds that Mr. Krumm's opinion does not undermine ALJ Gontis' treatment of Ms. Harvey's opinion. Instead, Mr. Krumm disagreed with Ms. Harvey's extreme limitations. Mr. Krumm opined that Ms. White would have no restrictions on "performing repetitive or short-cycle work," defined as "performing a few routine and uninvolved tasks over and over again." AR 501. "Interaction with people is included when it is routine, continual, or prescribed." *Id.* She would have no restrictions on "working under specific instructions," that is, "performing tasks . . . allowing little or no room for independent action or judgment in working out job problems." *Id.* She can "attain[] precise set limits, tolerances, and standards." *Id.*

ALJ Gontis' RFC is consistent with this opinion. He limited Ms. White "to jobs involving the performance of simple, routine tasks and simple work-related decisions," with "occasional[] interact[ion] with supervisors and coworkers" and "only infrequent, superficial interaction with the general public." AR 515. He limited her to "tolerating few changes in a routine work setting" and found that "[h]er time off task could be accommodated by normal breaks." *Id.* Thus, the Court rejects Ms. White's argument that all the medical opinion evidence points one way, towards a finding of disability. The medical providers did not reach the same opinion, and the

ALJ was thus entitled to analyze them and accord them different weights. His decision is supported by substantial evidence.

## II.     The ALJ Did Not Err in his Assessment of Dr. Baum's Opinion.

Ms. White's final argument focuses on a medical opinion not mentioned in Judge Garza's memorandum opinion: the opinion of Dr. Steven K. Baum, PhD, psychological examining consultant. Doc. 19 at 22-25. Ms. White's argument is thus not about the mandate rule, but rather whether substantial evidence supports ALJ Gontis' evaluation of this opinion. *Id.* The Court finds that it does and therefore affirms the ALJ's opinion.

Dr. Baum performed a clinical interview, reviewed medical records, administered tests, and wrote a report on August 17, 2018. AR 806. He diagnosed Ms. White with PTSD; major depression with psychosis (rule out unipolar); and anxiety/OCD. AR 808. He opined that "the brunt of her psychiatric symptoms appear to have evolved from serial child sexual abuse estimated to have begun at age 2 and ending at age 12." AR 806. He stated that Ms. White reported crying several times a week and sometimes screaming when in a quiet area at work. AR 806. "Throughout the session, she was weepy and at times stood up against the office wall due to pain, but was consistently accommodating and pleasant." AR 806. "By the end of the session, I was left with the impression of a broken human being." AR 806. Dr. Baum concluded that Ms. White had moderate limitations in her ability to work without supervision; to interact with the public; and to use public transportation or travel to unfamiliar places. AR 808. She had moderate to severe limitations in her ability to understand and remember detailed or complex instructions; to carry out instructions; to attend and concentrate; and to adapt to changes in the workplace. AR 808. She had severe limitations in her ability to interact with coworkers and supervisors. AR 808.

As ALJ Gontis noted, "[i]nterestingly, the day prior to examining the claimant, on August 16, 2018," Dr. Baum completed a Medical Assessment of Ability to do Work-Related Activities

(Mental) ("MSS"). AR 520 & 796-97. He considered Ms. White's medical history from 2011 to the current date of August 16, 2018. AR 796. Dr. Baum evaluated the four categories of non-exertional functioning. In understanding and memory, he found that Ms. White had one slight, two moderate, and no marked limitations. AR 796. In concentration and persistence, Ms. White had two slight, three moderate, and two marked limitations. AR 796. In social interaction limitations, she had two slight, one moderate, and two marked limitations. AR 797. In adaption, she had two slight, one moderate, and one marked limitation. AR 797.

On the same date, Dr. Baum also found that Ms. White meets the listing criteria for 12.04 Affective Disorders, 12.06 Anxiety-Related Disorders, and 12.15 Trauma and Stressor-Related Disorders. AR 798-801. In concluding that she meets the criteria for 12.04, he found that Ms. White suffers from "marked" limitations in social functioning and maintaining concentration, persistence, and pace. AR 798. He apparently had no opinion on her mental limitations when completing the form for 12.06. AR 799. In concluding that she meets the criteria for 12.15, he found that she suffers from marked limitations in all four categories (understanding, concentration, interaction with others, and adaptation). AR 800.

ALJ Gontis assigned these opinions "limited weight." AR 523. The ALJ recognized that Dr. Baum is an acceptable medical source. *Id.* On the other hand, Dr. Baum "appears to have based his opinion on the subjective evidence that the claimant reported and exhibited during a single examination more than a year after the period at issue ended." *Id.* His opinion "is unsupported by objective treatment records, which lack information on the claimant ever having sought care for back, shoulder or knee pain." *Id.* "Additionally, his opinions are contradictory as he opined in different forms that the claimant had different levels of limitations." *Id.* Finally, his opinions "are undermined by the fact that during the relevant period she went to college,

obtained several certificates, reported that her employment was 'homeschooling her children,' that her mental health providers opined that her conditions were managed and that she could go for months at a time between appointments." *Id.*

Ms. White argues that it is not permissible to reject an opinion on the basis that a consultative examination is a "single examination." Doc. 19 at 22-23. The Court agrees that an examining source's opinion may not be dismissed because of the lack of a treating relationship. In this case, however, the ALJ gave many other reasons for the weight he assigned Dr. Baum's opinion. His remark that Dr. Baum saw Ms. White only once is accurate and relevant, as the extent of a doctor's relationship with a patient is a factor in weighing that doctor's opinion. *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). ALJ Gontis' reference to the extent of Dr. Baum's relationship with Ms. White, therefore, does not inject reversible error into an otherwise correct decision.

Ms. White next argues that Dr. Baum's psychological report is temporally relevant. Doc. 19 at 23-24. She is correct that Dr. Baum reviewed medical records pertaining to the relevant time period and opined on her condition from 2011 to current examination. AR 796. Ms. White misses the ALJ's point, however. The ALJ was concerned with Dr. Baum opining that Ms. White was severely limited in 2018, even though she had by that point returned to substantial gainful activity. AR 520 ("More than a year after the claimant returned to work fulltime, apparently at the direction of her representative, she underwent an evaluation with Dr. Baum on August 17, 2018"). The fact is that Ms. White was working when Dr. Baum opined that she is too psychologically limited to work. This constitutes good grounds to assign less weight to that opinion.

Finally, Ms. White challenges the ALJ's conclusion that Dr. Baum's opinions are contradictory. Doc. 19 at 24. As the ALJ described, "Dr. Baum completed the forms inconsistently as he opined that the claimant had different levels of limitations—ranging from no limitations to marked limitations—on the three different forms." AR 521. In concluding that Ms. White meets the criteria for 12.04, Dr. Baum found that Ms. White suffers from "marked" limitations in social functioning and maintaining concentration, persistence, and pace. AR 798. In concluding that she meets the criteria for 12.15, he found that she suffers from marked limitations in all four categories (understanding, concentration, interaction with others, and adaptation). AR 800. Yet on the MSS form filled out on the same date, he found that Ms. White had one slight, two moderate, and *no* marked limitations in understanding and memory; and in concentration and persistence, she had two slight, three moderate, and two marked limitations. AR 796. As for social functioning, she had two slight, one moderate, and two marked limitations; and in adaptation, she had two slight, one moderate, and one marked limitation. AR 797.

Ms. White again claims "ALJ Gontis does not make clear to which specific forms he was referring." Doc. 19 at 24. To the contrary, the ALJ exhaustively discussed the forms on AR 520-21 with citations to the forms in the record. He did not need to repeat this discussion when evaluating Dr. Baum's opinion on AR 523. Ms. White further asserts that the ALJ was incorrect to compare these forms because they "are different, constructed by different parties for different purposes in different areas." Doc. 19 at 24 (emphasis removed). "Treatment providers use medical source statement to assess functional limitations while the Administration uses diagnostic forms to ascertain whether diagnosed impairments rise to the severity level of meeting the designated/diagnosed listing." *Id.* at 24 n.23. Ms. White cites no authority in support of her

contention that an ALJ should not compare information on the two forms. Moreover, while the forms may have been constructed for different purposes, the forms request similar information about a claimant's mental capabilities. To the extent a doctor provides conflicting information about a claimant's mental capabilities, it logically seems appropriate for the ALJ to consider this conflicting information when determining how much weight to give that doctor's opinion. Indeed, the regulations instruct that an ALJ should consider inconsistencies in the record. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007).

ALJ Gontis' decision is subject to the deferential substantial-evidence standard. *Biestek*, 139 S. Ct. at 1156; *Pisciotta*, 500 F.3d at 1078. Instead of conducting a de novo review of the ALJ's findings, the Court must determine whether his findings are supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S. Ct. at 1154. In doing so, the Court must ask whether the ALJ has identified "seemingly inconsistent" opinions in Dr. Baum's records. *See Pisciotta*, 500 F.3d at 1078 (concluding "the ALJ permissibly assigned low weight to the unsupported and seemingly inconsistent opinions in [doctor's] letter"). The Court answers this question in the affirmative. With regard to understanding and memory in particular, the record shows that Dr. Baum stated on one form that Ms. White has only slight to moderate limitations, AR 796, but then on a separate form he filled out the same day concluded that she is markedly limited, AR 800. Moreover, he drew all of these conclusions the day before he examined Ms. White in person. This is "seemingly inconsistent," as the ALJ explained.

Nor is this the only finding the ALJ made concerning inconsistency in Dr. Baum's opinion. The ALJ found that his opinion "is unsupported by objective treatment records, which lack information on the claimant ever having sought care for back, shoulder or knee pain." AR 523. Ms. White does not challenge this finding. The ALJ also found that Dr. Baum's opinions

"are undermined by the fact that during the relevant period she went to college, obtained several certificates, reported that her employment was 'homeschooling her children,' that her mental health providers opined that her conditions were managed and that she could go for months at a time between appointments." *Id.* As discussed with respect to Dr. Owen's opinion, the Court finds these reasons are supported by substantial evidence.

## Conclusion

For the reasons stated above, Ms. White's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 19) is **DENIED.**


**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**